EZEKIEL E. CORTEZ (SBN 112808)
Law Office of Ezekiel E. Cortez
550 West C Street, Suite 620
San Diego, CA 92101
T: (619) 237-0309 | F: (619) 237-8052
lawforjustice@gmail.com

Attorney for Petitioner, *Harshad Shah*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| HARSHAD SHAH,<br><br>　　　　　Petitioner,<br><br>vs.<br><br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Respondent. | Case No. SACV 21-027-CJC<br><br>**MOTION FOR RECUSAL PURSUANT TO TITLE 28 U.S.C. SECTION 455(A) ISO PETITION FOR A *WRIT OF HABEAS CORPUS* TO VACATE CONVICTION AND SENTENCE BECAUSE OF MULTIPLE ACTS OF INEFFECTIVE ASSISTANCE OF COUNSEL** |

**TO: TRACY WILKISON, ACTING UNITED STATES ATTORNEY; BENJAMIN R. BARRON, CHIEF ASSISTANT U.S. ATTORNEY- SANTA ANA BRANCH; JENNIFER L. WAIER, ASSISTANT U.S. ATTORNEY:**

Petitioner, Harshad Shah, hereby moves this court for assignment of his 28 USC Section 2255 *habeas* petition to a judge other than The Hon. Cormac J. Carney, pursuant to 28 USC Section 455(A).

## I.
### Pursuant to 28 USC Section 455(a) Shah Respectfully Asks that his *Petition* be Assigned to a Different Court

1. ***Facts Relative to Recusal***

The 9th Circuit noted in its Memorandum Opinion:

> But Dr. Shah has waived any such argument. After the status hearing—despite having full knowledge

of the circumstances that he now claims caused the judge to be biased against him—Dr. Shah **affirmatively declined an opportunity to have the case transferred to a new judge**.

*Id. See,* Exhibit G to *habeas* petition at BATES 62. Emphasis added. The Court did not say that there was no appearance of bias at all. The court simply defaulted to another act of failure, here the waiver by defense counsel. This is yet one more issue where trial counsel failed Shah.

The issue of an appearance of bias against Shah had been briefed for the appellate court and was predicated upon specific facts. These facts included those emanating from defense counsel's motion to continue the then-impending first trial. The court's bias was born at that hearing and would carry over onto the second trial and at sentencing.

On July 10, 2015 at a hearing on defense counsel's motion to continue the trial, because of medical issues experienced by Shah, the trial court questioned Shah about the exact medical condition. Shah explained, "I'm very weak. I cannot concentrate. I cannot see properly. I'm falling down often. It has been a – very stressful on my life and my wife, both." The court then asked Shah, "Can you see at all, sir?" Dr. Shah replied, "I see fuzzy – I see the fuzzy – very fuzzy, but I cannot see the light. Immediately they block my eyes." Exhibit B to *habeas* petition, BATES 6, lines 19-25. Shah did not say that he could not see at all, but rather that his vision was impaired because of his documented eyesight issues related to his degenerative diabetic condition.

The Government then introduced a surveillance video taken the day before. The Government argued that the video showed that Shah was lying about his ill health because, in it, he did not appear to be suffering from ***any*** physical health conditions at all. Because the Government neglected to show the exhibit to defense counsel first, the Government noted "I should have probably showed [sic] it to defense counsel first." *Id.* Exhibit B, BATES 9, line 12.

The court found the video troubling because it depicted Shah, on the previous day, engaged in "normal activities" like walking, driving out of his driveway, getting his mail, and handling the garbage. After colloquy, the court noted, *inter alia,* "I feel [Dr. Shah] has lied to me. There will be consequences to that." *Id.* BATES 15, lines 11-12. The court elaborated:

> And now I have a record **where I don't know if Dr. Shah's condition is serious or not. But I know he's lied to me, and I know he's lied to his attorneys**, and he's put you [his attorneys] in a very embarrassing situation where on the eve of trial he exposes you **to make you look like fools**. I'm just – I'm just calling it as I see it.
> …
> But then at the same time, I don't think a defendant has the right to manipulate the system. So, that's where I'm at. That's what I'm struggling with.

*Id.* at BATES 19, lines 14-19; BATES 20, lines 3-6; emphasis added.

The trial court's conclusion that Dr. Shah lied was precipitated by defense counsel's unfortunate disclosure of attorney-client communications suggesting to the court and the Government that Shah had indeed lied to them by exaggerating his symptoms. *Id.* at BATES 21, lines 8-11. Significantly, defense counsel also alerted the court to possible lack of competence. *Id.* at BATES 20: 4-16. *This all occurred four days before trial was to begin.*

The court and the parties then oddly agreed that, to address the lack of competence, the appropriate response was to *remand Shah into custody* for a *mental examination* that would take either one or four months. *Id.* at BATES 25: 4-25, BATES 26: 1-6.

The court inquired about how long defense counsel had been concerned that Shah was "**suffering from a mental condition that impacts his ability to assist in the defense**?" Emphasis added. Defense counsel admitted, "**Two, three weeks**." Emphasis added. The court then asked, "And other than providing **false and misleading information to you** concerning his ability to see and his ability to be

mobile, is there anything else?" *Id.* at BATES 13:17-23, emphasis added. The court then told defense counsel:

> Court: Mr. Severo, you're saying that you don't have a comfort that you have an effective communication with him. That's what I'm –
>
> Mr. Severo: That's correct.

*Id.* at BATES 16:22-25. Clearly, the court was alerted to possible competency, making the impeding trial problematic. Yet, the court did not act *sua sponte* to make sure that Shah was mentally competent to assist in his defense. Nor did the court seem to think about the quite normal – an out-of-custody mental examination.

Defense counsel then offered that Shah was "exaggerating" his medical symptoms: "I don't think there's any question that Dr. Shah is undergoing some **significant** medical issues. **The exaggeration of the symptoms is what's at stake here**." *Id.* at BATES 18, lines 1-3, emphasis added.

The court expressed concern over being on notice of competency concerns on the eve of trial:

> So what I'm concerned about is I have a representation from counsel … With this record, **am I on notice** and should I compel him to submit to a mental health examination, have him examined somewhere? …. You got to worry about your case, but **you also got to worry about whether he has been given his Sixth Amendment rights and his right to testify**.

*Id.* at BATES 15:18-25, 16:1-6, emphasis added.

The Court then indicated its *belief* that a Declaration by one of Shah's medical providers, was "false and misleading". *Id.* at BATES 19, lines 4-5. Yet, the court made no effort to contact the doctor in question nor articulate exactly why the court believed the doctor's declaration was false.

The court then offered to Shah a *Hobson's* "choice": (1) ignore the concerns regarding Shah's physical health **and mental competency** and proceed to trial **in four days**; or (2) continue the trial to conduct physical and mental competency evaluations,

Law Office of Ezekiel E. Cortez
550 West C Street, Suite 620
San Diego, CA 92101

***but remand Shah into custody for four months*** to do so. *Id.* at BATES 24, line 5 through BATES 25, line 9. This was not the proper option available to the court and to the parties. A mental examination of Shah could have easily been conducted out of custody. So, the readily discernible motive for the court to say that Shah would have to go into custody was intended by the court to be coercive in nature. This conclusion by the court was doubtful because the court would momentarily come to abandon its entire line of articulated "concern", and *sua sponte* duty, to ensure competency by Shah to proceed.

The Government for its helpful part urged the court to adopt *the wrong and inapplicable section of the law* that would require a person *who has already been found to be incompetent* to be hospitalized for four months **for treatment**: "Your Honor, it references four months. It says: 'The Attorney General shall hospitalize the defendant **for treatment** in a suitable facility for a reasonable period not to exceed four months.'" BATES 25, lines 10-14 (emphasis added)]

The court realized that the prosecutor was reading an ***inapplicable*** section of law, and then read into the record Title 18 U.S.C. § 4241, which states, "the court ***may*** commit" a person for a competency evaluation "for a reasonable period, but not to exceed 30 days." *Id.* at BATES 25: 23-25, emphasis added.

Despite this, Shah's counsel still misunderstood the law: "It sounds like [a competency evaluation] ***has to be done in custodial status***." BATES 26: 7-8, emphasis added. Based on this misunderstanding of the law, abdicating his obligations and loyalty, the defense indicated his preference to withdraw his allegations of incompetence to avoid being the cause of his client being remanded into custody. *Id.* at lines 8-9.

Defense counsel explicitly chose to ignore the competency and physical health issues he raised, and instead, just go to trial: "I'll have to work with Option 2 [to ignore the competency issue and proceed to trial in four days]. We'll go to trial and see where it goes." *Id.* at lines 15-16.

Surprisingly, the court accepted defense counsel's suggestion and bluntly said that it found no merit to defense counsel's concerns: "My inclination is to go forward, deny the motion for the continuance. My reasoning would be I don't believe he is in such a serious physical condition that he can't go to trial…. I'm not convinced he's suffering from a mental health defect." *Id.* at BATES 27: 7-9, 24-25.

Significantly, such a drastic, undeniably coercive measure to threaten incarceration to a medically unstable, aging professional who had never served time in custody before, was *not* required by law nor by the circumstances presented to the court. Yet, the court's actions at this hearing were tainted by the belief that Shah had lied to him and to his lawyers about his health condition; and presumably had faked mental incapacity as well.

Four days after this hearing, the court proceeded with Shah's first trial. Predictably, Shah did not testify in his own defense.

Tellingly, at the retrial when Shah was represented by a different set of lawyers, the prosecutor did something interesting. At the close of the evidence after defense counsel made a Rule 29 motion for judgment of acquittal, the specter of doubt over Shah's competency to *meaningfully assist his lawyers* may have provoked the prosecutor to ask the following:

> Court: Ms. Waier, I understand that you would like confirmation on the record that Dr. Shah does not want to testify?
>
> Ms. Waier: Yes, Your Honor.
>
> Court: Okay. Dr. Shah, I assume counsel has discussed with you your constitutional right to testify at the trial?
>
> Defendant: Yes.
>
> Court: And it's my understanding you've decided that you do not want to testify; is that correct?
>
> Defendant: Yes.
>
> Court: All right. And Counsel, do you join in that waiver?

>Mr. Cohen: I do, Your Honor.
>Court: Very well.
>Ms. Waier: Thank you, Your Honor.
>Court: Okay.

Exhibit C, BATES 40 at lines 8 through 24. This, after the first set of defense counsel had alerted the court and Government about having had concerns about Shah's mental competency for two weeks leading up to the hearing on the motion to continue the first trial.

Significantly, no one dispelled the competency issues raised at the July 10, 2015 hearing about Shah's ability to testify or to assist in his defense. This, despite the court's previous concerns, "And now I have a record where ***I don't know if Dr. Shah's condition is serious or not. But I know he's lied to me, and I know he's lied to his attorneys***...." Exhibit BATES 19, lines 14-16 (emphasis added).

This record indisputably contains at least "some basis" that the trial court rendered "a biased judgment". Again, days before trial, the court had erroneously determined that Shah had "lied" about his health condition, did not give the defense a meaningful opportunity to respond to those serious allegations, and gave Shah the *Hobson*'s choice to proceed to trial or go into custody, possibly for several months, for a competency evaluation, which was not legally required.

This set the tone that would infect the remainder of Shah's case, and unfairly deny him the appearance of an impartial judge, a fair trial, and due process of law. In each of its orders denying Shah's post-trial motions – including the Rule 29 *Motion for a Judgment of Acquittal*, the Rule 33 *Motion for a New Trial*, the *Motion to Strike the Presentence Report* – and in its refusal to consider entrapment or sentencing entrapment as mitigation *for sentencing purposes*, the court relied exclusively on the controlled undercover recordings by the IRS agents as reason enough to deny each motion. The court failed to engage in a proper legal analysis and ignored the specific facts alleged in each of Shah's motions. In so doing, the court projected obvious bias against Shah.

In *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986), the Court observed:

> When constitutional error calls into question the objectivity of those charged with bringing a defendant to judgment, a reviewing court can neither indulge a presumption of regularity **nor evaluate the resulting harm**. Accordingly, when the trial judge is discovered to have had **some basis** for rendering a biased judgment, his actual motivations are hidden from review, **and we must presume that the process was impaired**.

Citations omitted; emphasis added.

Shah requests that this 2255 must be reassigned to a judge without any hint of an apparent bias.

The dangerous probability that Harshad Shah may have been convicted by a jury because of the specter of racial *animus*, brings the propriety of this conviction into serious doubt. This is so because Shah, an immigrant and a person of color born and raised in India, had the misfortune of having been judged by the jury who was told *by the court* and the prosecution that it had permission to consider the supposed predisposition by Indians to commit bribery.

Title 28 U.S.C. § 455(a) provides for recusal where the court's "impartiality might reasonably be questioned." Section 455(a) has been held to apply to *merely the appearance* of bias or partiality to one party. See, *Liteky v. United States,* 510 U.S. 540, 548 (1994). In *Liteky,* the Court held:

> Subsection (a), the provision at issue here, was an entirely new "catchall" recusal provision, covering both "interest or relationship" and "bias or prejudice" grounds, see *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988) – but requiring them all to be evaluated on an objective basis, **so that what matters is not the reality of bias or prejudice but its appearance**. Quite simply and quite universally, recusal was required whenever "impartiality might reasonably be questioned."

*Liteky* at 548, and at 546-47, emphasis added.

The trial court here – Judge Carney – has already been burdened with at least another instance of an appearance of apparent racial bias. *See,* Exhibit D, *"Chief federal*

LAW OFFICE OF EZEKIEL E. CORTEZ
550 WEST C STREET, SUITE 620
SAN DIEGO, CA 92101

*judge in L.A. steps down over racially insensitive comments about Black court official",* Matt Hamilton, L.A. Times, June 28, 2020. BATES 41-46.

Here, instead of having acted *sua sponte* to prevent introduction at trial the racial *animus* opinion testimony about Indians being predisposed to corruption, the trial court instead blamed defense counsel for having failed to object and being the actual party to affirmatively introduce such prejudicial testimony. Of course, the actual record shows undeniably that it was the Government at its opening statement who did this. *See,* Exhibit E, Court's Order Denying Motion for New Trial. BATES 47-55.

It is quintessential to the American adversarial process and to judicial integrity that public servants *project* the appearance of *total* neutrality.  *See, In re United States,* 158 F.3d 26, 31 (1st Cir. 1998) and *In re United States,* 666 F.2d 690, 694 (1st Cir. 1981) (holding that the "the proceedings" must "appear to the public to be impartial….").

Respectfully submitted,

Dated: January 14, 2021

/S/ *Ezekiel E. Cortez*
EZEKIEL E. CORTEZ
*Attorney for Petitioner,
Harshad Shah*